IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-02989-PAB-CBS

NATHANIEL HAMPTON,
        Plaintiff,
v.

LIR A SIMS,
        Defendant.

_____

RECOMMENDATION AND ORDER OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

        This civil action comes before the court on: (1) "Plaintiff's Rule 60 Motion for Relief from Order," (2) Defendant's Motion to Dismiss, and (3) Plaintiff's "Motion for Trial by the Court on Plaintiff's Request for Declaratory Judgment."  Pursuant to the Order of Reference dated March 4, 2013 (Doc. # 13) and the memoranda dated March 4, 2013 (Doc. # 14), April 4, 2013 (Doc. # 23), and July 23, 2013 (Doc. # 43), these matters were referred to the Magistrate Judge. The court has reviewed the Motions, Mr. Hampton's Response (filed April 26, 2013 ) (Doc. # 27), Defendant's Reply (filed May 29, 2013) (Doc. # 29), the Second Amended Complaint ("SAC"), the entire case file, the proceedings held on May 15, 2013 (*see* Courtroom Minutes/Minute Order (Doc. # 34)), and the applicable law and is sufficiently advised in the premises.

I.      Statement of the Case

        Mr. Hampton is currently incarcerated at the Delta Correctional Center of the Colorado Department of Corrections ("CDOC") in Delta, Colorado and is proceeding in his *pro se* capacity.  (*See* SAC (Doc. # 41)).  On June 18, 2013, the court permitted Mr. Hampton to file his SAC.  (*See* Order (Doc. # 40)).  In the SAC, Mr. Hampton alleges two claims pursuant to Title 42 U.S.C. § 1983 against his former state probation officer, Ms. Sims.[1]  He claims that

_____

        [1]   Defendants State of Colorado and Judge Barney Iuppa were dismissed from this lawsuit on January 29, 2013.  (*See* "Order to Dismiss in Part and to Assign in Part to a District Judge and a Magistrate Judge" (Doc. # 10)).  That Order is the subject of Mr.

Ms. Sims denied him access to the courts in violation of his First and Fourteenth Amendment rights when she refused to grant him permission to leave a court-ordered residential drug and alcohol rehabilitation program at the Stout Street Foundation.  (*See* Doc. # 41 at 10 of 24).  Mr. Hampton alleges that as a result, he took an unauthorized leave from the Stout Street program, thereby violating conditions of his probation, which was subsequently revoked.  (*See* Doc. # 41 at 3, 11 of 24).  He alleges that Ms. Sims initiated revocation proceedings in "retaliation" when he left the Stout Street program without permission.  (*See* Doc. # 41 at 3, 9 of 24).  Mr. Hampton "seeks [c]ompensatory, actual, exemplary, punitive, general, incidental, putative, and special damages in the amount of $13,000,000.00 and all other money damages deemed appropriate by the court and awarded by a jury."  (*See* Doc. # 41 at 11 of 24).  He also seeks "declaratory relief" in the form of "an order from the court for the Defendant's to enact a means by which the state prisoners . . . have a way to access the state courts without violating the conditions of their deferred sentence or their probation, . . . all relief" that he is "barred from, in case # 11-cv-01415-PAB-CBS, . . ." and "prospective relief . . . in the form of an order placing plaintiff back on his original sentence of probation. . . ."  (*See* Doc. # 41 at 17 of 24).

II.      Defendant's Motion to Dismiss

A       Standard of Review

Ms. Sims moves pursuant to Fed. R. Civ. P. 12(b)(1) and (6) to dismiss the SAC.  Rule 12(b)(1) empowers a court to dismiss a complaint for lack of jurisdiction over the subject matter.  *American Fair Credit Ass'n v. United Credit Nat. Bank*, 132 F. Supp. 2d 1304,1308-09 (D. Colo. 2001) (internal quotation marks and citations omitted).  Ms. Sims does not raise any specific argument under Rule 12(b)(1).

Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  The court's function on a Rule 12(b)(6) motion

is not to weigh potential evidence that the parties might present at trial, but to

---

Hampton's pending "Rule 60. Motion for Relief from Order" (Doc. # 12).

assess whether the plaintiff's Complaint alone is legally sufficient to state a claim for which relief may be granted.  In doing so, the Court must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff. . . The plausibility standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible.  However, where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.  Thus, even though modern rules of pleading are somewhat forgiving, a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.

*Hull v. Colorado Bd. of Governors of Colorado State University*, 805 F. Supp. 2d 1094, 1102 (D. Colo. 2011) (internal quotation marks and citations omitted).

The court must "read pro se complaints more liberally than those composed by lawyers."  *Firstenberg v. City of Santa Fe, N.M.*, 696 F.3d 1018, 1024 (10th Cir. 2012) (internal quotation marks and citation omitted).  However, "the generous construction" that is afforded pro se pleadings has limits, and the court "must avoid becoming the plaintiff's advocate."  *Id.*  Although the court does not "hold the pro se plaintiff to the standard of a trained lawyer," it nonetheless relies on "the plaintiff's statement of his own cause of action."  *Firstenberg*, 696 F.3d at 1024 (internal quotation marks and citations omitted).  Thus, the court "may not rewrite a [complaint] to include claims that were never presented."  *Id.* (internal quotation marks and citations omitted).  A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *See Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint");  *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues").

B.      Analysis

Section 1983 creates a cause of action where a  "person . . . under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person . . . to the deprivation of any rights,

privileges or immunities secured by the Constitution." Section 1983 does not create any substantive rights; rather, it creates only a remedy for violations of rights secured by federal statutory and constitutional law. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 616-18 (1979). To establish a claim under § 1983, a plaintiff must prove he was deprived of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed under color of law. *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). To the extent that Mr. Hampton is suing Ms. Sims in her individual capacity, personal capacity suits seek to impose personal liability upon a government official for actions he or she takes. *Kentucky v. Graham*, 473 U.S. 159, 165-67 (1985).

In October 2010, Mr. Hampton pleaded guilty to a drug charge and was sentenced to six years probation and ordered to complete a residential drug and alcohol rehabilitation program at the Stout Street Foundation as a condition of his probation. (*See* Doc. # 41 at 9 of 24; Exhibit 1 to Motion to Dismiss, El Paso County District Court Case No. 2010CR2400 (Doc. # 22-1 at 9 of 11)).[2] Mr. Hampton alleges that after he entered the rehabilitation program, he decided to challenge his sentence. (*See id.* at 9 of 24). He alleges that he asked Ms. Sims to remove him from his court-ordered rehabilitation program "for a few months" so that he could "take care of his legal issues." (*See* Doc. # 41 at 10 of 24). After she refused, Mr. Hampton left the program without authorization. (*See id.* at 10-11 of 24). Ms. Sims then notified the court that Mr. Hampton had violated the terms of his probation. (*See id.* at 11 of 24; Doc. # 22-1 at 8 of 11). Mr. Hampton was arrested on March 29, 2011, approximately a month after he left the program. (*See* Exhibit 1 to Motion to Dismiss, El Paso County District Court Case No. 2010CR2400 (Doc. # 22-1 at 8 of 11)). Mr. Hampton's probation was revoked on June 24, 2011. (*See* Doc. # 22-1 at 6 of 11).

Mr. Hampton filed a motion challenging his sentence on April 15, 2011. (*See* "Motion

---

[2]   In considering a Rule 12(b)(6) motion, a court may consider matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). "The pleading is deemed to include any document attached to it as an exhibit or any document incorporated in it by reference." *Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir. 1985) (citation omitted).

to Correct an Illegal Sentence Pursuant to Rule 35(a) C.R.Cr.P." (Doc. # 41 at 18 of 24); Doc.
# 22-1 at 7 of 11)).  The court denied this and other motions challenging Mr. Hampton's
sentence.  (*See* November 3, 2011 Order Denying Motion for Reconsideration of Sentence
(Doc. # 22-1 at 5 of 11);  May 2, 2012 Order Denying Motion for Leave for Trial Court to
Address 35a Motion (Doc. # 22-1 at 4 of 11);  June 13, 2012 Order Denying Motion Under
35c (Doc. # 22-1 at 4 of 11;  Doc. # 27 at 20 of 22); *see also* "Writ of Mandamus" (Doc. # 27
at 9 of 22);  "Motion for Judgment on Postconviction Motion" filed on December 27, 2011
(Doc. # 27 at 12 of 22), January 3, 2012 Order Denying Motion for Judgment on
Postconviction Motion (Doc # 27 at 14 of 22;  Doc. # 22-1 at 5 of 11);  February 2, 2012
Order Denying Writ of Mandamus (Doc. # 27 at 15 of 22; Doc. # 22-1 at 5 of 11);  "35(c),
Motion for New Appeal" (Doc. # 27 at 17 of 22)).

On August 30, 2012, Mr. Hampton sued Ms. Sims in Adams County District Court,
alleging the same claims he brings here.  (*See* Exhibit 2 to Motion to Dismiss, Complaint in
Adams County District Court Case No. 12CV1058 (Doc. # 22-2)).  The Adams County District
Court ruled that Mr. Hampton had failed to state a claim against Ms. Sims and ordered him to
show cause why the complaint should not be dismissed.  (*See* September 18, 2012 Order of
Judge Scott Crabtree (Doc. # 22-2 at 4 of 4)).  In response, Mr. Hampton withdrew his
complaint and the court dismissed the lawsuit without prejudice.  (*See* "Motion to Withdraw"
(Doc. # 27 at 21-22 of 22).  He initiated this federal case two months later, on November 13,
2012.  (*See* Doc. # 1).

    1.    Denial of Access to Court

Prison inmates have a constitutional right to meaningful access to the courts. *Bounds
v. Smith*, 430 U.S. 817, 823 (1977), *overruled in part on other grounds by Lewis v. Casey*,
518 U.S. 343, 354 (1996).  "The right of access to the courts . . . assures that no person will
be denied the opportunity to present to the judiciary allegations concerning violations of
fundamental constitutional rights." *Wolff v. McDonnell*, 418 U.S. 539, 579  (1974), *abrogated
in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).  An allegation of denial of

access to the courts is viewed as an aspect of the freedom of petition clause of the First Amendment, *Harrison v. Springdale Water and Sewer Comm'n*, 780 F.2d 1422, 1427 n. 7 (8th Cir. 1986), as guaranteed by the Fourteenth Amendment.  *See Bounds v. Smith*, 430 U.S. at 822 (Due Process Clause of the Fourteenth Amendment guarantees state inmates the right to "adequate, effective, and meaningful" access to the courts).  *See also Green v. Johnson*, 977 F.2d 1383, 1389 (10th Cir. 1992) ("The constitutional right of access to the courts is guaranteed by the Due Process Clause[ ] of the . . . Fourteenth Amendment[ ]."); *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) ("the right of access is founded on the due process clause and guarantees the right to present to a court of law allegations concerning the violation of constitutional rights.");  *Nordgren v. Milliken*, 762 F.2d 851, 853 (10th Cir. 1985) (prisoner's constitutional right of access to the courts is accorded by article 4 of the Constitution and the Fourteenth Amendment, as well as by the First Amendment right to petition).  "Any deliberate impediment to access [to the courts], even a delay of access, may constitute a constitutional deprivation."  *Green*, 977 F.2d at 1389 (internal quotation marks and citation omitted).

To the extent Mr. Hampton alleges violation of his right of access to the courts based on Ms. Sims' denial of his request to leave the court-ordered rehabilitation program, he must plead and prove that he was actually impeded in his ability to conduct a particular case.  *See Lewis v. Casey*, 518 U.S. at 348-55 (To plead a violation of this right, a plaintiff must allege that the state's interference led to an "actual injury" by "frustrat[ing]," "imped[ing]," or "hinder[ing] his efforts to pursue a legal claim.").  In order to satisfy the actual injury requirement, the plaintiff must show that he was impeded in his ability to file non-frivolous direct appeals from his conviction, a habeas corpus petition or a civil rights claim pursuant to § 1983 "to vindicate basic constitutional rights."  *Id.*, at 354-55 ("[P]risoners have a right to access to the courts only in relation to direct appeals from the convictions for which they were incarcerated, habeas petitions, or civil rights actions challenging the conditions of their confinement.") (internal quotation marks and citation omitted).  *See also Peterson v. Shanks*, 149 F.3d 1140, 1145 (10th Cir. 1998) ("To present a viable claim for denial of access to

courts, however, an inmate must allege and prove prejudice arising from Defendants'

actions."); *Smith v. Maschner*, 899 F.2d at 944 (an inmate alleging interference with legal

access must allege specific facts showing that a "distinct and palpable" injury resulted from

defendants' conduct.).

Mr. Hampton alleges that he "decided to take legal actions in the form of a 35(c)

regarding his attorney, a 35(a) regarding the manner in which plaintiff was illegally

resentenced and a U.S.C. § 1983 regarding the arresting officers actions in the arrest and

taking of the plaintiff's property (see Colo. Court of App. Case # 2011CA2163), (see U.S.

Dist. Court Case # 11-cv-01415-PAB-CBS, ACTION ON THE OFFICERS), (see attached

Exhibit (x) 35(a) Motion)." (*See* Doc. # 41 at 9 of 24).  He argues that "leaving [the Stout

Street program was] the only way to get access" to the court.  (*See* Response (Doc. # 27) at

3 of 22).  However, Mr. Hampton filed collateral attacks on his conviction and sentence and

civil rights complaints only after he was arrested on March 29, 2011 for violation of the

conditions of his probation.  (*See* Doc. # 22-1 at 4-7 of 11).

Mr. Hampton does not sufficiently allege Ms. Sims's actions that hindered his ability to

pursue his legal claims.  His allegations do not indicate that he missed any deadlines or that

any case was dismissed due to Ms. Sims's actions.  His allegations and arguments suggest

that he was able to pursue his legal options and file his motions.  Mr. Hampton filed all but

one of his motions in his state criminal case after his probation was revoked and after he was

sentenced to the custody of the Colorado Department of Corrections.  (*See* Doc. # 22-1).  His

state court appeal, Colo. Ct. App. Case No. 2011CA2163, and his federal civil rights case,

11-cv-01415-PAB-CBS, are ongoing.  (*See* Doc. # 41 at 9 of 24).  "[A]n isolated incident,

without any evidence of improper motive or resulting interference with [Mr. Hampton's] right

to counsel or to access to the courts, does not give rise to a constitutional violation." *Smith v.*

*Maschner*, 899 F.2d at 944.  Alone, Mr. Hampton's allegation that he suffered emotional

distress is insufficient to state a claim for denial of access to the court.  *Russo v. Glasser*, 279

F. Supp. 2d 136, 144 (D. Conn. 2003) (citing *Monsky v. Moraghan*, 127 F.3d 243, 247 (2d

Cir. 1997) (plaintiff's emotional distress claims "are not the type of actual injury that gives rise

to a constitutional claim of denial of access to the courts")).  Mr. Hampton does not adequately allege that his access to the courts was impaired or that he suffered any actual injury due to Ms. Sims's conduct.

Mr. Hampton cites no authority that Ms. Sims, a probation officer, had the ability to modify the terms of his probation and allow him to leave his court-ordered rehabilitation program.  Colorado law provides probation officers no such authority.  (*See generally*, Colo. Rev. Stat. § 16-11-209 (Duties of probation officers)).  The legal authority to set the conditions of Mr. Hampton's probation lies exclusively within the discretion of the court.  *See* Colo. Rev. Stat. §§ 18-1.3-202, 18-1.3-203, 18-1.3-204, 18-1.3-210.  *See also, e.g., Lee v. Baroski,* 404 F. Supp. 1394, 1396 (D.C. Va. 19750 ("One on probation is not at large, nor at liberty, except within the circumscribed limits permitted by his probation. He is in law and in fact in the custody and under the control of the court of his probation.") (citation omitted).  Mr. Hampton does not dispute this.  His own allegations indicate that the El Paso County District Court ordered him to complete the Stout Street program as a condition of his probation.  He acknowledges that "the Plaintiff was challenging the court's order of [Ms. Sims's] supervision" and that "the Court, for good cause shown . . . may alter the conditions of probation."  (*See* Doc. # 27 at 6-7 of 22).  He alleges that he left the court-ordered rehabilitation program without permission and that Ms. Sims notified the court of his probation violation.  Because Ms. Sims had no authority to alter his sentence or the conditions of his probation, Mr. Hampton fails to state a constitutional claim against her.  *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (a §1983 claim requires "personal involvement in the alleged constitutional violation.").  In sum, Mr. Hampton's claim for denial of access to the courts is properly dismissed for failure to state a claim to which relief can be granted.

2.      Retaliation

Mr. Hampton alleges that Ms. Sims notified the court that he violated his probation conditions in retaliation for "tak[ing] care of his legal issues."  (*See* Doc. # 41 at 10-11 of 24). "[O]fficials may not retaliate against or harass an inmate because of the inmate's exercise of

his constitutional rights . . . even where the action taken in retaliation would be otherwise permissible." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (internal quotation marks and citation omitted).  *See also Hartman v. Moore*, 547 U.S. 250, 256 (2006) (noting that "the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, . . .").  Nevertheless, retaliation claims in a prison context are viewed with "skepticism because [e]very act of discipline by prison officials is by definition retaliatory in the sense that it responds directly to prisoner misconduct."  *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 2006) (internal quotation marks and citation omitted).  Therefore, "[a]n inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights."  *Peterson*, 149 F.3d at 1144 (internal quotation marks and citation omitted).  "[A] plaintiff must prove that but for the retaliatory motive, the incidents to which he refers, including the disciplinary action, would not have taken place."  *Id.*  (internal quotation marks and citation omitted).  *See also Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir. 2004) ("[I]n order to establish a First Amendment retaliation claim, a prisoner must demonstrate that he was (1) engaged in protected conduct; (2) that he suffered an adverse action; and (3) that a causal connection exists between the protected conduct and the adverse action.") (citation omitted);  *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003) ("To state a valid claim for retaliation under § 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation.").

Mr. Hampton's claim fails because he does not adequately plead that "tak[ing] care of his legal issues" was the "but for" cause for Ms. Sims to file the warrant with the court on February 24, 2011 based on his failure to comply with probation conditions.  (*See* Doc. # 22-1 at 8 of 11).  His own allegations state that he left the court-ordered Stout Street program without permission.  As Mr. Hampton's probation officer, Ms. Sims was obligated to notify the court of Mr. Hampton's unauthorized departure from the Stout Street program.  *See* C.R.S. § 16-11-205(5).  While Mr. Hampton argues that he left the program in order to pursue a legal

action to challenge his sentence, he had not yet challenged his sentence at the time of his probation revocation hearing.  He did not engage in any protected activity to challenge his sentence until after he was arrested, the court revoked his probation, and he was sentenced to the custody of the Colorado Department of Corrections.

Mr. Hampton's own allegation that he left the Stout Street program without permission provides grounds that Ms. Sims would have taken the same action even in the absence of any protected activity.  He fails to allege any specific dates, a chronology of events, or specific facts pointing to Ms. Sims's intent to retaliate against him.  He alleges nothing more than his speculation that if not for an impermissible retaliatory motive, Ms. Sims would not have reported his probation violation to the court.[3]  Mr. Hampton cannot state a claim for retaliation with mere conclusory allegations.  *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) ("[T]he court may insist that the plaintiff put forward specific, nonconclusory factual allegations that establish improper motive causing cognizable injury in order to survive a prediscovery motion for dismissal . . . .") (internal quotation marks and citation omitted); *Baker v. Smith*, 771 F. Supp. 1156, 1158 (D. Kan. 1991) ("A complaint that contains only conclusory allegations of a deprivation of a constitutional right and thus fails to supply a sufficient factual basis to allow defendants to intelligently prepare a defense fails to state a cause of action and must be dismissed") (citations omitted);  *Strope v. Cummings*, No. 09-3306, 381 F. App'x 878, 883 (10th Cir. June 9, 2010) (plaintiff's "attribution of retaliatory motive" that was "conjectural and conclusory" did not support a claim of retaliation).[4]  Even when viewed in a light most favorable to Mr. Hampton, his generalizations do not state a claim for retaliation.

---

[3]     To the extent that Mr. Hampton argues that Ms. Sims retaliated against him by recommending at the probation revocation hearing that his probation be revoked (*see* Doc. # 27 at 7 of 22), she is absolutely immune for her testimony in court, or for sentencing recommendations.  *See Tripati v. United States Immigration and Naturalization Service*, 784 F.3d 345, 348 (10th Cir. 1986) (probation officers are protected by absolute immunity for actions intimately associated with the judicial phase of the criminal process, including the selection of an appropriate sentence).

[4]     A copy of the unpublished case cited is attached to this Recommendation.

3.      Qualified Immunity.

Ms. Sims raises the defense of qualified immunity to Mr. Hampton's claims against her

in her individual capacity.  Whether a defendant is entitled to qualified immunity is a legal

question.  *Wilder v. Turner*, 490 F.3d 810, 813 (10th Cir. 2007).

> Resolution of a dispositive motion based on qualified immunity involves a
> two-pronged inquiry. First, a court must decide whether the facts that a plaintiff
> has alleged or shown make out a violation of a constitutional right. Second, . . .
> the court must decide whether the right at issue was clearly established at the
> time of the defendant's alleged misconduct.

*Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009) (internal quotation

marks and citations omitted).  "A reviewing court may exercise [its] sound discretion in

deciding which of the two prongs of the qualified immunity analysis should be addressed first

in light of the circumstances in the particular case at hand."  *Id.* "Qualified immunity is

applicable unless" the plaintiff can satisfy both prongs of the inquiry. *Id.*

Once a defendant asserts the defense of qualified immunity, the burden shifts to the

plaintiff to show that (1) the defendant violated a constitutional or statutory right and (2) the

constitutional or statutory right was clearly established when the alleged violation occurred.

*Verdecia v. Adams*, 327 F.3d 1171, 1174 (10th Cir. 2003).  As the court concludes that Mr.

Hampton fails to state any plausible constitutional violation, Ms. Sims in her individual

capacity is entitled to qualified immunity.  The court need not reach the "clearly established"

prong of qualified immunity to conclude that Mr. Hampton's claims fail against Ms. Sims in

her individual capacity.  *See Wilder*, 490 F.3d at 815 (instructing district court on remand to

enter judgment in favor of defendant on basis of qualified immunity, where plaintiff failed to

carry his burden to show violation of a constitutional right).


III.     "Plaintiff's Rule 60 Motion for Relief from Order"

Mr. Hampton asks for reconsideration of Senior District Judge Babcock's Order dated

January 29, 2013 "to Dismiss in Part and to Assign in Part to a District Judge and a

Magistrate Judge."  (*See* Docs. # 12, # 10).  Mr. Hampton argues that the court should have

allowed him "to amend the complaint to include," among other things, "a request for an

injunction that would invalidate the state court[']s order revoking the plaintiff's probation and then ordering the State to reinstate the plaintiff's probation." (*See* Doc. # 12 at 2, 4 of 6).

Mr. Hampton has not demonstrated any basis under Rule 60 for relief from the court's January 29, 2013 Order.  Former Defendant Iuppa's absolute judicial immunity from Mr. Hampton's claims has not changed.  Mr. Hampton was subsequently permitted to amend his pleading and file his SAC, which includes the injunctive relief he wished to seek.  (*See* Doc. # 40, Doc. # 41 at 17 of 24).  Further, the court recommends here that the SAC be dismissed for failure to state a claim to which relief can be granted, including any request for injunctive relief.  For these reasons, Mr. Hampton's "Rule 60 Motion for Relief from Order" is properly denied.


Accordingly, IT IS RECOMMENDED that:

1.      Defendant's Motion to Dismiss (filed April 4, 2013) (Doc. # 22) be GRANTED and this civil action be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim to which relief can be granted.

2.      "Plaintiff's Rule 60 Motion for Relief from Order" (filed March 1, 2013) (Doc. # 12) be DENIED.


Further, IT IS ORDERED that, in light of the court's Recommendation, Plaintiff's "Motion for Trial by the Court on Plaintiff's Request for Declaratory Judgment" (filed July 22, 2013) (Doc. # 42) is DENIED at this time.


**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A general objection that does not put the District Court on notice of the basis for

the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 6th day of November, 2013.

BY THE COURT:


  s/ Craig B. Shaffer
United States Magistrate Judge